IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| In re: | * | |
| FPMI SOLUTIONS, INC. | * | Case No: 16-12142-RGM |
| | | (Chapter 11) |
| Debtor | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

DEBTOR'S MOTION FOR ORDER (I) AUTHORIZING THE
DEBTOR TO OBTAIN POSTPETITION FINANCING AND USE
LOAN PROCEEDS, AND (II) GRANTING RELATED RELIEF

FPMI Solutions, Inc., the debtor and debtor in possession herein (the "Debtor" or the "Movant"), by counsel, files this Motion for Order (I) Authorizing the Debtor to Obtain Postpetition Financing and Use Loan Proceeds, and (II) Granting Related Relief (the "Motion") pursuant to sections 363 and 364 of the United States Bankruptcy Code (the "Bankruptcy Code"), and states:

Jurisdiction and Venue

1. The Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for relief are §§ 363 and 364 of the Bankruptcy Code.

Background

4. On June 20, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to manage and operate its business as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

5. No official committee of unsecured creditors has been appointed.

6. The Debtor is a government contractor that operates as a business partner to organizations. The Debtor's federal solutions work includes human capital management,

---

Paul Sweeney, 33994
Yumkas, Vidmar, Sweeney & Mulrenin, LLC
10211 Wincopin Circle, Suite 500
Columbia, Maryland 21044
(443) 569-5972
psweeney@yvslaw.com
Counsel for Debtor

human capital outsourcing, and learning services. Its global/commercial solutions work includes strategic HR consulting solutions, recruitment process outsourcing & executive search, temporary service providers, shared services, and learning services.

7. The Debtor filed this bankruptcy case because of an alleged default under the Prepetition Loan Agreement (as defined below) that caused the Lender (as defined below) to sweep $860,723.08 from the Debtor's bank account, resulting in the Debtor's inability to make payroll on June 3, 2016 or at any time thereafter. The Debtor sought bankruptcy protection in order to develop a plan to move forward following its breakdown in negotiations with its secured lender, Western Alliance Bank, as successor in interest to Bridge Bank, National Association (the "Lender"), and a potential acquirer.

## The Prepetition Credit Facility

8. Before the Petition Date, the Debtor and the Lender entered into that certain Loan and Security Agreement, dated as of September 26, 2011, as amended and restated by that certain Amended and Restated Loan and Security Agreement, dated as of September 26, 2013, as further amended by that certain First Amendment to Amended and Restated Security Agreement, dated as of September 25, 2015, as further amended by that certain Second Amendment to Amended and Restated Security Agreement, dated as of December 16, 2015, as further amended by that certain Forbearance Agreement and Third Amendment to Amended and Restated Loan and Security Agreement, dated as of April 19, 2016 (collectively, and as otherwise amended, restated, supplemented or modified from time to time, the "Prepetition Loan Agreement").

9. Pursuant to the Prepetition Loan Agreement and related documents, the Debtor had access to a senior secured credit facility in the original principal amount of $2,500,000. As of the Petition Date, approximately $429,000 in principal obligations were outstanding under the Prepetition Loan Agreement. The obligations under the Prepetition Loan Agreement (the "Prepetition Indebtedness") are secured by a first priority, senior lien on all personal property of the Debtor.

### The Debtor's Need for DIP Financing

10. The proposed DIP loan facility (the "DIP Facility") from the Lender will provide Four Hundred Thousand Dollars ($400,000) to be used by the Debtor to fund the ordinary course expenses necessary to administer this case. The Debtor asserts that such amount is adequate for its funding needs at this time. This assertion is without prejudice to the Debtor's right to request additional funding from the Lender, and if the Lender agrees to provide additional funding, to seek this Court's authority, to borrow additional funds in the future if and as needed through the DIP Facility. No later than Monday, July 11, 2016 at 5:00 pm, the Lender, upon receipt of a satisfactory borrowing base certificate, shall provide its determination of the eligible amount available to be drawn upon once the DIP Facility is approved.

11. The Debtor believes it is necessary to obtain postpetition financing under the DIP Facility in order to maximize the value of its estate for the benefit of all parties in interest by continuing to operate as a going concern prior to a sale.

12. Absent the proposed DIP Facility, the Debtor will not have sufficient liquidity to fund its ordinary course expenditures, or to pay the expenses necessary to administer this bankruptcy case. Absent such funding, the Debtor would be required to cease operations, causing irreparable harm to the Debtor and its estate. Accordingly, the Debtor has a present need for the DIP Facility and entry of an interim order (the "Interim DIP Order") and final order (the "Final DIP Order" and, together with the Interim DIP Order, the "DIP Orders") authorizing and approving the DIP Facility.

13. As described more fully below, the Debtor has sought and is unable to obtain financing from other sources on terms preferable to the proposed DIP Facility. Specifically, the Debtor is unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(l) of the Bankruptcy Code or (b) under section 364(c)(l) of the Bankruptcy Code, or (ii) adequate credit secured by a lien on unencumbered assets of the Debtor's estate under section 364(c)(2) of the Bankruptcy Code.

14. The best source of secured credit available to the Debtor is the DIP Facility. The Debtor requires financing under the DIP Facility in order to satisfy its postpetition

liquidity needs.  Hence, the Debtor has determined, in the exercise of its sound business judgment, that it requires financing under the terms of the DIP Facility and hereby requests authority to obtain such financing.

### Efforts to Obtain Alternative Financing

15. Prior to the Petition Date, the Debtor's litigation against the Lender made an alternate lending source extremely difficult to obtain.  In addition, the Lender refused to provide unsecured lending.

16. Now at a critical juncture in this bankruptcy case, the Debtor has evaluated its alternatives and determined that the DIP financing proposal described more fully herein below presents the best opportunity to successfully reorganize its financial affairs.

### Concise Statement of Relief Requested

17. In accordance with Federal Rule of Bankruptcy Procedure 4001(c), the Debtor submits this concise statement of the material terms of the DIP Facility to be evidenced by a Debtor in Possession Loan and Security Agreement, to be filed with the Court prior to the hearing on this motion, and such related documents as the Lender may reasonably require (collectively, the "DIP Facility Documents") and the DIP Orders.  The summary below is qualified in its entirety by reference to the provisions of the DIP Facility Documents and the DIP Orders.  To the extent there is any conflict or inconsistency between this summary and the terms of the DIP Facility Documents and the DIP Orders, the latter shall govern.

| **Borrower** | FPMI Solutions, Inc. |
|---|---|
| **Lender** | Western Alliance Bank |
| **Amount** | $400,000.00 |
| **Interest Rate** | One and one quarter of one percent (1.25%) above the greater of (i) three and one quarter percent (3.25%), or (ii) the variable rate of interest, per annum, most recently announced by the Lender as its "prime rate," whether or not such announced rate is the lowest rate available from the Lender. |

| **Borrowing Base** | The DIP Facility shall be governed by a borrowing base (the "Borrowing Base") equal to ninety percent (90%) of the Debtor's billed Eligible Accounts (as defined below) (net of pre-paid deposits, offsets and contras related to each specific account debtor), all as determined by the Lender with reference to Borrowing Base reports delivered by the Debtor to the Lender in a form satisfactory to the Lender in its sole and absolute discretion. Borrowing Base reports shall be delivered to the Lender on a weekly basis and upon every advance on the DIP Facility. For purposes of determining availability for any advance requested by the Debtor under the DIP Facility, the Lender shall take into account both the Prepetition Indebtedness and any amounts borrowed under the DIP Facility at the time of the request for an advance.<br>"Eligible Accounts" shall be defined as those billed accounts that arise in the ordinary course of the Debtor's business that comply with all of the Debtor's representations and warranties to the Lender; provided, that standards of eligibility may be fixed and revised from time to time by the Lender in the Lender's reasonable judgment based on the results of audits of the accounts or other information received by the Lender showing deterioration of the accounts and upon notification thereof to the Debtor. Unless otherwise agreed to by the Lender, Eligible Accounts shall not include the following:<br>    (a)  accounts that the account debtor has failed to pay within (90) days of invoice date;<br>    (b)  accounts with respect to an account debtor, fifty percent (50%) of whose accounts the account debtor has failed to pay within ninety (90) days of invoice date;<br>    (c)  accounts with respect to which the account debtor is an officer, employee, or agent of the Debtor;<br>    (d)  accounts with respect to which the account debtor is an affiliate of the Debtor;<br>    (e)  accounts with respect to an account debtor, including affiliates and subsidiaries of the Debtor, whose total obligations to the Debtor exceed fifty percent (50%) of all accounts, except as approved in writing by the Lender;<br>    (f)  progress billings and unbilled work in progress;<br>    (g)  retention billings;<br>    (h)  bill and hold accounts;<br>    (i)  accounts with respect to which the account debtor disputes liability or makes any claim with respect thereto as to which the Lender believes, in its sole discretion, that there may be a basis for dispute (but only to the extent of the amount subject to such dispute or claim), or is subject to any insolvency proceeding, or becomes insolvent, or goes out of business; and<br>    (j)  accounts the collection of which the Lender reasonably determines to be doubtful. |
|---|---|
| **Payments** | Payments of interest only shall be due and payable on the tenth (10th) calendar day of each month, through and including the Maturity Date (as defined below). |

| **Maturity Date** | The earliest of: (i) September 1, 2016, (ii) the date of closing of the sale of substantially all of the Debtor's assets, (iii) the effective date of a confirmed Chapter 11 plan of reorganization, and (iv) the acceleration of the loan by the Lender as a result of the occurrence of an Event of Default. |
|---|---|
| **Proposed Use of Proceeds** | The loan proceeds shall be used to pay the fees and expenses of Debtor's business operations and the Carve-Out (as defined below). |
| **Collateral** | The collateral securing the Prepetition Loan shall be secured by a security interest in all of the Debtor's personal property, whether presently existing or hereafter created or acquired (the "Collateral"), including but not limited to:<br>    (a)   all cash, cash equivalents, accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, goods, instruments, inventory, investment property, letter of credit rights, ownership rights and interests in other entities (including all stock certificates, membership certificates and other documents evidencing ownership rights and interests in other entities), and all books and records related to the foregoing; and<br>    (b)   any and all cash proceeds and/or noncash proceeds of any of the foregoing, including, without limitation, insurance proceeds. |
| **Priority** | The DIP Facility shall be authorized and approved by the Court pursuant to Section 364(c)(3) of the Bankruptcy Code to be incurred as, and shall constitute, a lien on the Collateral, junior only to the lien of the Lender under the Prepetition Loan Agreement and the Carve-Out (as defined below).<br>Effective upon entry of the Final DIP Order, all obligations of the Debtor under the DIP Facility shall at all times be entitled to superpriority claim status under Section 364(c)(1) of the Bankruptcy Code and shall have priority over any and all administrative expenses specified in Sections 105, 326, 328, 330, 331, 364(c), 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1114 of the Bankruptcy Code, or otherwise, subject only to the Carve-Out (as defined below). |
| **Carve-Out** | Notwithstanding anything to the contrary herein, the lien in the Collateral securing the DIP Facility shall be subject and subordinate to the Carve-Out.  As used herein, "Carve-Out" means the following in an aggregate amount not to exceed $100,000: (i) unpaid fees of the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930; (ii) unpaid fees and expenses of the professionals of the Debtor retained by an order of the Court pursuant to §§ 327, 328, 363 or 1103(a) of the Bankruptcy Code (the "Professionals") to the extent such fees and expenses are subsequently allowed by the Court under §§ 330, 331, or 363 of the Bankruptcy Code, and (iii) any retainers or any professional expense escrow account established by the Borrower.  The Debtor may not use the Carve Out to object to or contest in any manner, or to raise any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Prepetition Indebtedness or the Prepetition Loan Agreement. |

| | |
|---|---|
| **Conditions to Borrowing** | Obligations of the Lender to make each advance under the DIP Facility are subject to the following conditions precedent: (i) all necessary consents and approvals have been obtained, including all necessary internal credit approvals by the Lender; (ii) all information and documents requested by the Lender have been received in a form satisfactory to the Lender in its sole and absolute discretion; (iii) the Interim DIP Order has been entered, and it is effective and not subject to amendment, modification or stay, (iv) all the representations and warranties made in the DIP Facility Documents remain true in all material respects, (v) the Debtor is current on its reporting obligations to the Lender; and (vi) no Default or Event of Default has occurred or will occur after giving effect to the advance. |
| **Reporting** | The Debtor shall promptly provide all financial reports as requested by the Lender, in addition to such reports as are required under the Prepetition Loan Agreement and any interim or final cash collateral order. |
| **Financial Covenants** | Financial covenants shall include compliance with an approved budget on a weekly and cumulative basis, within a ten percent (10%) cumulative variance by category and a five percent (5%) cumulative variance in total. The Debtor shall provide weekly variance reports and such other information as the Lender requires to monitor the Debtor's compliance with the approved budget. |
| **Release of Lender** | Effective upon the date of entry of the Interim DIP Order, the Debtor shall acknowledge that it has no claim, cause of action, counterclaim, defense, offset or demand of any kind or nature that can be asserted to reduce or eliminate all or any part of the Prepetition Indebtedness or to seek affirmative relief or damages of any kind or nature from the Lender. In addition, effective upon the date of entry of the Interim DIP Order, the Debtor and its affiliate, FPMI Solutions Group, Inc., and their equity owners (individually and collectively, the "Debtor Group Releasors") shall release the Lender and its affiliates and their directors, officers, representatives, employees, agents, insurers, successors and assigns (individually and collectively, the "Lender Group Releasees") from any and all claims, causes of action, demands, damages, liabilities, losses, obligations, costs, fees and expenses of whatsoever nature, character and kind, whether in law or equity, whether known or unknown, whether disclosed or undisclosed, whether anticipated or unanticipated, whether asserted or unasserted, whether direct or indirect, whether contingent or liquidated, which any of the Debtor Group Releasors ever had, now has or may have in the future against any of the Lender Group Releasees arising out of, based upon or in any manner connected with any transaction, event, circumstance, action, failure to act or occurrence of any type which occurred, existed, was taken, permitted or begun at any time prior to the date of entry of the Interim DIP Order.  Without limiting the generality of the foregoing, the release shall cover any claims and causes of action which any of the Debtor Group Releasors ever had, now has or may have in the future against any of the Lender Group Releasees arising out of or relating to the Prepetition Loan Agreement and the Prepetition Indebtedness. |

| | |
|---|---|
| | The release to be granted by the Debtor Group Releasors is intended to be general and as broad as permitted by law so as to release all matters existing or arising at any time prior to entry of the Interim DIP Order. To this end, each of the Debtor Group Releasors shall waive and relinquish, to the fullest extent permitted under applicable law, any rights that it may have under any law limiting the effect of a release, including California Civil Code Section 1542, which states: A GENERAL RLEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR. |
| **Dismissal of Pending Litigation** | Within five (5) business days following the date of entry of the Interim DIP Order, the Debtor shall take such action as is necessary to dismiss with prejudice the litigation against the Lender currently pending before the Bankruptcy Court and before the United States District Court for the Northern District of California. |
| **Section 506(c) Waiver** | The Final DIP Order shall provide that no costs or expenses of administration which have been or may be incurred at any time in connection with the Debtor's bankruptcy case shall be charged against the Lender or the Collateral pursuant to Sections 105 or 506(c) of the Bankruptcy Code or otherwise. |
| **Events of Default** | The DIP Facility will terminate, and all amounts owing thereunder will immediately be due and payable without action or notice, if any of the following (each an "Event of Default") shall occur: (i) the occurrence of an Event of Default under the Prepetition Loan Agreement; (ii) the occurrence of an Event of Default under the Interim Cash Collateral Order or any final order governing the Debtor's use of cash collateral; (iii) entry of an order without the prior consent of the Lender amending, supplementing or otherwise modifying the Interim DIP Order or the Final DIP Order; (iv) reversal, vacatur or stay of the effectiveness of the Interim DIP Order, or the Final DIP Order; (4v) entry of an order to sell all or any part of the Collateral that does not provide for payment in full of the Debtor's obligations to the Lender; (vi) the filing of a plan of reorganization that does not provide for the payment in full of the Debtor's obligations to the Lender; and (vii) the Debtor asserts a claim or initiates an action seeking any relief against the Lender, including any action to avoid, invalidate, avoid, set aside or subordinate the Prepetition Indebtedness or the Lender's liens on the Collateral. |

| **Challenge Period** | The stipulations, findings, representations and releases contained in the DIP Facility Documents and the DIP Orders with respect to the Prepetition Loan Agreement and the Prepetition Indebtedness shall be binding upon all parties-in-interest, any trustee appointed in the Debtor's bankruptcy case and any statutory committee appointed in the Debtor's bankruptcy case (each, a "Challenge Party"), unless and solely to the extent that the Court rules in favor of the Challenge Party in a timely and properly filed Challenge. |
|---|---|
| | A "Challenge" means any claim or cause of action against the Lender or an objection or challenge to: (i) the validity, extent, priority, or perfection of the security interests and liens of the Lender under the Prepetition Loan Agreement; (ii) the validity, allowability, priority or amount of the Prepetition Indebtedness; (iii) the secured status of the Prepetition Indebtedness; or (iv) any liability of the Lender with respect to any matter arising out of or relating to the Prepetition Loan Agreement.  Any statutory committee appointed in the Debtor's bankruptcy case shall have 45 calendar days from the date of its appointment to formally commence a Challenge, and any other party-in-interest shall have 45 calendar days from the date of entry of the Interim DIP Order to formally commence a Challenge. |
| **Automatic Perfection** | The Interim DIP Order shall constitute sufficient and conclusive evidence of the priority, perfection and validity of the security interests in and liens upon the Collateral, without the necessity of filing, recording or serving any financing statements or other documents that may otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to Lender in the DIP Facility Documents and the DIP Orders. |

18. The Debtor submits that the foregoing relief is critical to its efforts to maximize value and structure its business for the benefit of its estate and all parties in interest.

Bases for Relief

19. "It is given that most successful reorganizations require the debtor-in-possession to obtain new financing simultaneously with or soon after the commencement of the Chapter 11 case." *In re Ames Department Stores, Inc.*, 115 B.R. 34, 36 (Bankr. S.D.N.Y. 1990).

20. A debtor in possession's ability to obtain postpetition financing is governed by § 364 of the Bankruptcy Code, which presents a hierarchy of permissible postpetition financing arrangements. *See* 11 U.S.C. § 364; *Modanlo v. Ahan (In re Modanlo)*, No. DKC 2006-1181, 2006 WL 4606303, *4 (D. Md. Aug. 16, 2006).  Initially, a debtor must seek unsecured financing, offering a lender only administrative expense priority status. 11 U.S.C. § 364(a) and (b).  If such financing is not available, the court may authorize

(1) "super-priority" administrative expense status for the lender's claims, (2) first priority liens on unencumbered property, or (3) junior liens on property already encumbered by a lien. 11 U.S.C. § 364(c).

21.     A court may approve secured financing under § 364(c) of the Bankruptcy Code if the debtor demonstrates that it has reasonably attempted, but failed, to obtain unsecured credit under sections 364(a) or (b). *In re Ames*, 115 B.R. at 37; *see Modanlo*, 2006 WL 4606303 at *5.

22.     A debtor does not need to seek financing proposals from every possible lender or lending source before seeking the next level up in the § 364 financing hierarchy, but should make a reasonable effort to seek other sources of less onerous financing. *See In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re 495 Central Park Avenue Corp.*, 136 B.R. 626, 630-631 (Bankr. S.D.N.Y. 1992).

23.     In reviewing requests for approval of postpetition financing, assuming that the statutory requirements are met, courts generally defer to a debtor's business judgment so long as the financing does not contain terms that leverage the bankruptcy process or powers, does not primarily benefit a third party over the estate, and does not unfairly cede control of the reorganization to one party in interest. *See, e.g., In re Mastercraft Interiors, Ltd.*, No. 06-12769, 2006 WL 4595946, *4 (Bankr. Md. Aug. 10, 2006) (approving financing as exercise of debtor's business judgment); *In re Ames*, 115 B.R. at 40; *In re YL West 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010); *In re Barbara K Enterprises, Inc.*, 2008 Bankr. LEXIS 1917, *39-40 (Bankr. S.D.N.Y. 2008). At the same time, there must be evidence of a benefit for the estate in obtaining the financing. *See Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 866 (4th Cir. 1994).

24.     As set forth below, approval and closing on the DIP Facility is essential to the orderly continuation of the Debtor's operations and is critical for the management and preservation of the assets of its estate. Moreover, the Debtor, exercising its prudent business judgment, believes the financing is fair, reasonable, necessary and appropriate. After reasonable efforts under the circumstances, the Debtor was unable to obtain from any other qualified lenders

the necessary financing on less onerous terms. Accordingly, the Debtor has satisfied the requirements of § 364(c).

### The DIP Facility is the Best Financing Option Available

25. The Debtor has actively explored alternatives to the financing to be provided under the DIP Facility and has been unable to procure financing in the form of unsecured credit allowable under § 503(b)(1) of the Bankruptcy Code, as an administrative expense under § 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to § 364(c)(1) of the Bankruptcy Code without the grant of a junior lien on assets. In sum, the Debtor was unable to obtain from any other qualified lenders unsecured or secured credit on terms as competitive as those provided for under the DIP Financing.

### The Budget is Adequate to Pay Chapter 11 Operating Expenses

26. The Debtor, with the assistance of its professional advisors, prepared a budget based on historical costs of operation, reasonable projections regarding operations, and the added costs of operating under Chapter 11 of the Bankruptcy Code. The Debtor identified the amount of financing needed to operate in this case, and successfully secured a proposal for that amount from the Lender. As such, the Debtor respectfully submits that the budget is adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the budget.

### The DIP Facility is Fair and Reasonable and was Negotiated in Good Faith

27. The Debtor believes that the terms and conditions of the DIP Facility are fair, just, and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors in possession, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The DIP Facility Documents have been negotiated in good faith and at arms' length by and between the Debtor and the Lender, with all parties represented by counsel. Accordingly, the Debtor believes that any credit extended under the terms of the DIP Facility

Documents and the DIP Orders is extended in good faith by the Lender as that term is used in § 364(e) of the Bankruptcy Code.

28. After appropriate investigation and analysis, the Debtor has concluded that the DIP Facility is the best alternative available under the circumstances. Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money. *See Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court"); *In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) ("More exacting scrutiny would slow the administration of the Debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estates, and threaten the court's ability to control a case impartially."); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

29. In general, a bankruptcy court should defer to a debtor's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *See In re Mastercraft Interiors, Ltd.*, No. 06-12769, 2006 WL 4595946, *4 (Bankr. Md. Aug. 10, 2006); *see also In re Curlew Valley Assocs.*, 14 B.R. 507, 511-13 (Bankr. D. Utah 1981). Courts generally will not second guess a debtor's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code." *In re Curlew Valley Assocs.*, 14 B.R. at 513-14 (footnotes omitted).

30. The Debtor has exercised sound business judgment—seeking advice from its professional legal and financial advisors—in determining that the DIP Facility is appropriate and consistent with applicable legal authority. The terms of the DIP Facility are fair and reasonable and are in the best interests of the Debtor's estate. Accordingly, the Debtor should be granted authority under § 364(c) of the Bankruptcy Code to enter into the DIP Facility Documents and to borrow funds from the Lender on the basis described above.

Notice

31. Notice of this Motion has been given to the following parties or to their counsel, if known: (i) the Office of the United States Trustee; (ii) the Debtor's prepetition secured lenders, and (iii) all parties identified on the Debtor's list of twenty largest unsecured creditors. In light of the nature of the relief requested, the Debtor submits that no further notice is necessary.

32. No previous motion for the relief sought herein has been made to this Court or to any other court.

Statement Pursuant to Local Bankruptcy Rule 9013-1

33. Pursuant to Local Bankruptcy Rule 9013-1, the Debtor states that, in lieu of submitting a memorandum in support of this Motion, it will rely solely upon the grounds and authorities set forth herein.

WHEREFORE, the Debtor respectfully requests that the Court enter a final order, substantially in the form to be filed with the Court, granting the relief requested herein and such other and further relief as the Court deems just and appropriate.

Dated: July 1, 2016

*/s/ Paul Sweeney*
Paul Sweeney, 33994
Yumkas, Vidmar, Sweeney & Mulrenin, LLC
10211 Wincopin Circle, Suite 500
Columbia, Maryland 21044
(443) 569-5972
psweeney@yvslaw.com

Counsel for Debtor

**CERTIFICATE OF SERVICE**

   I hereby certify that on the 1st day of July 2016, notice of filing the Motion for Order (I) Authorizing the Debtor to Obtain Postpetition Financing and Use Loan Proceeds, and (II) Granting Related Relief (the "Motion") was sent electronically to those parties listed on the docket as being entitled to such electronic notice, and a copy of the Motion was mailed first class, postage prepaid to the parties on the attached service list.

                   */s/ Paul Sweeney*
                   Paul Sweeney

| | | |
|---|---|---|
| Aronson LLC<br>805 King Farm Boulevard<br>Rockville, MD 20850 | Blue Cross Blue Shield<br>450 Riverchase Parkway East<br>Birmingham, AL 35298 | Bosserman Ctr Conflict Resolution<br>1100 Camden Avenue<br>Salisbury, MD 21801 |
| Canal Center TT LLC<br>P. O. Box 785801<br>Philadelphia, PA 19178 | CIGNA Life Insurance Company<br>P. O. Box 8500 K 110<br>Philadelphia, PA 19178-0110 | Deltek Systems, Inc.<br>P. O. Box 79581<br>Baltimore, MD 21279-0581 |
| Dentons US LLP<br>233 South Wacker Drive, Suite 5900<br>Chicago, IL 60606-6361 | Department of Justice<br>Executive Office for US Trustees<br>441 G Street NW, Suite 6150<br>Washington, DC 20548 | Federal Hill Renewal LLC<br>P. O. Box 23<br>New Market, MD 21774 |
| GSA Modifications LLC<br>4646 Roundhill Road<br>Ellicott City, MD 21043 | ITC-DELTACOM/Deltacom 1058<br>P. O. Box 2252<br>Birmingham, AL 35246-1058 | Kelly, Anderson & Associates<br>424 North Washington Street<br>Alexandria, VA 22314 |
| Mass Mutual<br>Attn: N 405 DCS David Kern<br>1295 State Street<br>Springfield, MA 01111-0001 | Robert M. McLindon<br>11222 Beach Mill Road<br>Great Falls, VA 22066 | MCS Partnership<br>c/o Samples Properties<br>P. O. Box 264<br>Huntsville, AL 35801 |
| NEC Financial Services<br>24189 Network Place<br>Chicago, IL 60673-1241 | Jimmi L. Pittmon<br>11804 Rodeo Drive<br>Frisco, TX 75035-2275 | Monique E. Smith<br>6056 Chicory Place, Suite 100<br>Alexandria, VA 22310 |
| Cheryl Vinci<br>26187 Tuscany Drive<br>Millsboro, DE 19966 | Syrena J. West<br>176 Bluegreen Way<br>Rockwood, TN 37584 | Robert K. Coulter<br>Assistant U.S. Attorney<br>Office of the U.S. Attorney<br>Eastern District of Virginia<br>2100 Jamieson Avenue,<br>Alexandria, Virginia  22314 |

The following parties received
electronic notice of the filing:

| | | |
|---|---|---|
| Joseph A. Guzinski, Esquire<br>Jack Frankel, Esquire<br>Office of the United States Trustee<br>115 South Union Street, Room 210<br>Alexandria, Virginia  22314 | Jerald R. Hess, Esquire<br>Counsel for Western Alliance Bank<br>DLA Piper LLP (US)<br>500 Eighth Street, N.W.<br>Washington, D.C. 20004 | Jennifer Maria Kappel, Esquire<br>Counsel for Bridge Bank<br>DLA Piper, LLP<br>11911 Freedom Drive, Suite 300<br>Reston, Virginia  20190 |
| Paul Sweeney, Esquire<br>Counsel for Debtor<br>Yumkas, Vidmar, Sweeney & Mulrenin<br>10211 Wincopin Circle, Suite 500<br>Columbia, Maryland  21044 | | |