# EXHIBIT 1

# Bid Procedures

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | * | |
| FPMI Solutions, Inc. | * | Case No: 16-12142 REM |
| | | (Chapter 11) |
| | * | |
| Debtor | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

BID PROCEDURES

1.    These bid procedures shall govern the process by which FPMI Solutions, Inc., debtor and debtor in possession, ("Debtor") shall sell the the majority of its assets used in the business of Debtor.

2.    On _____, 2016, the Bankruptcy Court entered the Bid Procedures Order approving the Bid Procedures, as revised from time to time by the Debtor. The Bid Procedures detail the process by which the Debtor will select the purchaser of the Assets. The timeline set forth herein is designed so that the Debtor will select a purchaser and a back-up reserve purchaser of the Assets no later than _____**, 2016** and seek approval of the successful and back-up bids by the Court at the Sale Hearing on _____**, 2016 at 2:00 p.m. ET**.

**A.**    **Defined Terms**

3.    "**Agreement**" means the agreement for the purchase and Sale of the Assets, as revised to reflect the terms of the Stalking Horse Bid, a Qualified Bid, or an Auction Bid, a form of which was attached to the Stalking Horse Notice.

4.    "**Alternate Sale**" means a transaction approved by an order of the Bankruptcy Court (regardless of the form thereof) involving a Sale of the Assets to a purchaser or purchasers other than the Stalking Horse.

5.    "**Auction**" or "**Best and Final Auction**" means the auction scheduled to take place on _____**, 2016 at 10:00 a.m. ET** at the offices of _____ in _____.

6.    "**Auction Bid**" means a bid made by a Qualified Bidder during the Auction.

7.    "**Auction Bid Form**" means a form that may be distributed at the Auction with blanks for each Qualified Bidder to complete with the relevant terms of its Auction Bid.

8.    "**Bankruptcy Case**" means the Chapter 11 bankruptcy case commenced by the Debtor on June 20, 2016 and pending before the Bankruptcy Court as Case No. 16-12142 REM.

9.    "**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Eastern District of Virginia located at 200 S. Washington St. Alexandria, VA

22315-5405, or, as the context requires, any other court of competent jurisdiction exercising jurisdiction over the Bankruptcy Case.

10. "**Bid Procedures**" means the procedures detailed herein describing the process for the Sale of the Assets, subject to any reasonable modifications by the Debtor that may be necessary.

11. "**Bid Procedures Motion**" means that certain Debtor's Motion for an Order (I) Approving Bid Procedures, (II) Authorizing the Debtor to Select a Stalking Horse and Approving Certain Bid Protections in Connection Therewith, (III) Scheduling Related Deadlines, (IV) Approving Manner of Notices, and (V) Granting Related Relief, filed on August 5, 2016 [Dkt. # ____] and approved by the Court's Bid Procedures Order.

12. "**Bid Procedures Order**" means the order entered by the Court on _____, 2016 approving the Bid Procedures Motion [Dkt. _____].

13. "**Break-Up Fee**" means the bid protection offered by the Debtor to the Stalking Horse.  Specifically, the bid protection is a fee equal to the lesser of thirty thousand dollars ($30,000) or actual costs incurred.  The Break-Up Fee, if any, shall be payable to the Stalking Horse only in the event that the Stalking Horse Agreement is terminated as a result of the Debtor consummating an Alternate Sale. The Break-Up Fee, if any, will constitute a lien against the proceeds of an Alternate Sale and will be entitled to status and payment as an administrative expense in the Bankruptcy Case under Sections 503(b), 506 and 507(a)(1) of the Bankruptcy Code.

14. "**Closing**" shall mean the consummation of the Sale of the Assets by the

15. "**Debtor**" or "**FPMI**" means FPMI Solutions Inc., debtor and debtor in possession under this Bankruptcy Case.

16. "**Debtor's Counsel**" means Paul Sweeney, Esquire, Yumkas, Vidmar, Sweeney & Mulrenin, LLC, 10211 Wincopin Circle, Suite 500, Columbia, Maryland 21401, telephone: 443-569-5972, fax: 410-571-2798, email: psweeney@yvslaw.com.

17. "**Motion to Sell Free and Clear**" means the Debtor's Motion for an Order (I) Approving Asset Purchase Agreement and Authorizing Sale of Assets Outside the Ordinary Course of Business, (II) Authorizing Sale of Assets and Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief filed with the Bankruptcy Court herewith.

18. "**Notice of the Successful Bid and the Reserve Bid**" means the notice to be filed by the Debtor with the Court on _____**, 2016** notifying the Court of the Debtor's selection of the Successful Bid and the Reserve Bid.

19. "**Objection Deadline**" means _____**, 2016**, the formal court deadline for filing objections to the Sale with the Bankruptcy Court.

20. Intentionally omitted

21. "**Potential Bidder**" means an interested party (i) determined by the Debtor to be reasonably likely to be a Qualified Bidder and intends to make a Qualified Bid, and (ii) who delivers an executed confidentiality agreement in form and substance satisfactory to the Debtor.

22. "**Qualified Bid**" means a bid submitted by a Qualified Bidder that (a) meets the criteria provided herein, and (b) is higher and better than the Stalking Horse Bid in an amount of no less than $_____$. A Qualified Bid can be submitted to the Broker and Debtor's Counsel at any time prior to the Qualified Bid Deadline.

23. "**Qualified Bid Deadline**" means **_____, 2016 at 5:00 pm ET**.

24. "**Qualified Bidder**" means a Potential Bidder that meets the following criteria: (a) delivers the most current audited (if available) and the latest unaudited financial statements and/or financial information evidencing the Potential Bidder's ability to close the transaction that meets the Debtor's satisfaction, and/or such other information as determined by the Debtor to reasonably support the Potential Bidder's ability to close the Sale of the Assets, and (b) submits a Qualified Bid, or intends to submit an Auction Bid, at the Auction. The Stalking Horse has been determined by the Debtor to be a Qualified Bidder. The Debtor's secured lender has also been determined to be a Qualified Bidder.

25. "**Reserve Bid**" means the second highest and best bid, as determined by the Debtor at the conclusion of the Auction.

26. "**Reserve Bidder**" means the entity that submits the Reserve Bid.

27. "**Sale**" means a completed transaction wherein the Debtor sells the Assets to a purchaser selected pursuant to the Bid Procedures.

28. "**Sale Hearing**" means the hearing to authorize the Sale, currently scheduled for _____**, 2016 at** _____ **a.m./p.m. ET** at the Bankruptcy Court.

29. "**Stalking Horse**" means the _____, which is a Qualified Bidder.

30. "**Stalking Horse Agreement**" means the Agreement filed with the Stalking Horse Notice revised to reflect the terms of the Stalking Horse Bid and executed by the Debtor and the Stalking Horse.

31. "**Stalking Horse Bid**" means the bid submitted by the Stalking Horse, as detailed in the Stalking Horse Agreement.

32. "**Stalking Horse Notice**" means the notice filed by the Debtor with the Bankruptcy Court on _____, 2016.

33. "**Successful Bid**" means the highest and best bid, as determined by the Debtor at the conclusion of the Auction.

34. "**Successful Bidder**" means the entity that submits the Successful Bid.

B. **Auction**

35. The Debtor will conduct an Auction on _____**, 2016 at 10:00 am ET** at the offices of DLA Piper, LLP (USA), at 500 8th St NW, Washington DC, 20004. After evaluating the bids submitted prior to the _____**, 2016** Qualified Bid Deadline, the Debtor will, by _____**, 2016 at 12:00 pm ET**, notify all Qualified Bidders via email and/or telephone.

36. Any Qualified Bidder may participate in the Auction in person or through a representative who provides appropriate evidence of such person's authority, such as an incumbency certificate. Only Qualified Bidders shall be entitled to make bids during the Auction.

4841-3744-7478, v. 1                                              - 3 -

37. At the beginning of the Auction, the Debtor will announce the highest and best Qualified Bid received to date and open the floor for submission of Auction Bids.

38. During the Auction, Qualified Bidders may increase their Auction Bids in any manner that they deem fit; provided, however, that the initial overbid must be greater than $10,000. Thereafter, each subsequent increase must include a material increase of additional consideration over the immediately preceding Auction Bid, as determined by the Debtor in the exercise of its business judgment. The Debtor reserves the right to approach any Qualified Bidder and seek clarification as to the terms of the Qualified Bidder's Auction Bid at any time.

39. The Auction will continue until the Debtor determines that it has received the Successful Bid and the Reserve Bid. In making these determinations, the Debtor may consider, without limitation, the amount of the purchase price, the form of consideration being offered, the Qualified Bidder's ability to close a transaction and the timing thereof, and the net benefit to the Debtor's estate.

40. At the conclusion of the Auction, each of the Successful Bidder and the Reserve Bidder shall increase the amount of its cash deposit to an amount equal to 10% of its Successful Bid or Reserve Bid, respectively.

41. The Debtor reserves the right, in its business judgment, to make one or more modifications and/or adjournments to the Auction to, among other things: (i) facilitate discussions between the Debtor and individual Qualified Bidders; (ii) allow individual Qualified Bidders to consider how they wish to proceed; and (iii) give Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor, in its business judgment may require.

C. **Requirements for a Qualified Bid**

42. All Qualified Bids must be submitted by the Qualified Bid Deadline. To be deemed a Qualified Bid that may be considered at the Auction, a bid must:

(a) be in writing;

(b) be submitted by a Qualified Bidder;

(c) provide any details concerning the purchase price and any other material terms;

(d) be accompanied with proof of a cash deposit equal to 5% of the aggregate value of the bid;

(e) confirm the Qualified Bidder's completion of all due diligence;

(f) be irrevocable until the earlier of (i) the Qualified Bidder's bid being determined by the Debtor not to be a Qualified Bid, or (ii) another Qualified Bidder's bid being approved by the Court;

(g) be accompanied with a fully executed and binding Agreement (and demonstrating any modifications as necessary);

(h) not contain any financing contingencies of any kind;

   (i) be accompanied by an affirmative statement from such Qualified Bidder that it will completely comply with these Bid Procedures; and

   (j) contain identification information for the bidder, including, the name telephone number, address, and email of the primary contact person.

  43. The Debtor, in consultation with its secured lender, will make a determination regarding whether a bid is a Qualified Bid and shall notify all Qualified Bidders whether their bids have been determined to be Qualified Bids by the earlier of three days after receipt, or by noon on \_\_\_\_\_**, 2016**. The Debtor reserves the right to reject any bid for any reason. Notwithstanding anything contained herein to the contrary, should the bid of a Qualified Bidder fail to meet the qualifications to become a Qualified Bid, the Debtor may allow a Qualified Bidder additional time to cure any deficiencies to such bid.

  **D.** **Secured Lender's Right to Credit Bid**

  44. Notwithstanding anything to the contrary in the Bid Procedures, the Debtor's secured lender (Western Alliance Bank, as successor in interest to Bridge Bank, National Association) shall be considered a Qualified Bidder and shall have the right at the Auction to credit bid all or any part of its claim within the meaning of Section 363(k) of the Bankruptcy Code.

  **E.** **Due Diligence and Qualified Bid Deadline**

  45. Until the Qualified Bid Deadline, the Debtor will afford to each Potential Bidder reasonable access to all due diligence materials relating directly to the Assets, subject to the extent such materials are in Debtor's possession or control, and subject to any restrictions of applicable law, and access to the Assets for inspection purposes. The Debtor and its advisors are not responsible for, and will bear no liability with respect to, any information obtained by Potential Bidders in connection with its due diligence. Potential Bidders must provide proof of adequate insurance prior to accessing the Assets.

  46. For further information any Potential Bidders should contact the Debtor through Debtor's Counsel as follows:

    Debtor's Counsel:

    Paul Sweeney, Esquire
    Yumkas, Vidmar, Sweeney & Mulrenin, LLC
    10211 Wincopin Circle, Suite 500
    Columbia, Maryland  21044
    Tel: 443-569-5972
    Fax: 410-571-2798
    psweeney@yvslaw.com

  47. In addition, a Potential Bidder that desires to make a Qualified Bid shall deliver written and electronic copies of such bid to the Debtor's Counsel and Broker at the addresses and emails provided above, so as to be received by no later than the Qualified Bid Deadline.

  **F.** **Notice of Successful and Reserve Bids**

      48.    Prior to the Sale Hearing, the Debtor will file a Notice of the Successful Bid and the Reserve Bid with the Court.

### G.     Sale Hearing

      49.    At the Sale Hearing the Debtor will request, pursuant to the Motion to Sell Free and Clear, the Court's approval for Sale of the Assets to the Successful Bidder and, in the alternative, the Reserve Bidder.

### H.     Closing

      50.    The Closing shall take place as soon as practical, and no later than three (3) days after Court approval of the Sale.

### I.     Failure to Consummate Sale

      51.    Following the Sale Hearing, if the Successful Bidder fails to consummate the Closing of the Sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtor will be authorized, but not required, to consummate the Sale with the Reserve Bidder without further order of the Court.  In such case, the defaulting Successful Bidder's deposit shall be forfeited to the Debtor.  Additionally, the Debtor shall be entitled to seek all available damages from the defaulting Successful Bidder including, but not limited to, any Break-Up Fee and the difference between the price offered by the Successful Bidder and that received in an Alternate Sale.

### J.     Return of Deposit

      52.    The deposit of the Successful Bidder shall be applied to the Successful Bidder's obligations under the Successful Bid upon Closing of the Sale, as detailed in the Agreement.  If a Successful Bidder fails to complete the Closing, then such Successful Bidder shall forfeit its deposit and any right to any Break-Up Fee, if applicable.

      53.    The deposit of the Reserve Bidder shall be returned to the Reserve Bidder upon Closing of the Sale contemplated by the Successful Bidder; provided, however, if the Successful Bidder fails to close the Sale when and as provided in the Successful Bid, then the deposit of the Reserve Bidder shall be applied to the Reserve Bidder's obligations under the Reserve Bid upon Closing of the Sale contemplated thereby.  If a Reserve Bidder fails to close the Sale contemplated by a Reserve Bid, then such Reserve Bidder shall forfeit its deposit.

      54.    The deposits of Qualified Bidders who are not the Successful Bidder or Reserve Bidder shall be returned within three (3) business days after the conclusion of the Auction.

      55.    The Debtor reserves all rights regarding any return of deposits, and the failure by the Debtor to timely return any deposit shall not serve as a claim for breach of any bid or create any default in favor of any bidder.

### K.     Modifications

      56.    The Debtor, in its reasonable business judgment, may further modify these Bid Procedures without Court approval at any time and in any manner that will best promote the goals of the Bid Procedures and the Motion to Sell Free and Clear, including but not limited to, extending or modifying any of the dates described herein.

- 7 -

**END OF BID PROCEDURES**

4841-3744-7478, v. 1